IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

RONALD R. FAGLES,                   :          CIVIL ACTION NO. **1:CV-06-1806**
                                    :
    Plaintiff                  :             (Judge Caldwell)
                                    :
    v.                         :          (Magistrate Judge Blewitt)
                                    :
MICHAEL J. ASTRUE,                  :
Commissioner of                     :
Social Security,                    :
                                    :
    Defendant                  :

## REPORT AND RECOMMENDATION

This is a Social Security disability case, pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), filed on September 14, 2006.  (Doc. 1).  The Plaintiff, Ronald R. Fagles, is seeking review of the decision of the Commissioner of Social Security ("Commissioner")[1] which denied her claim for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act (Act), 42 U.S.C. §§ 401-433.

## I. PROCEDURAL HISTORY.

The Plaintiff protectively filed an application for DIB on July 7, 2004, alleging an inability to work since July 14, 2003, due to severe back and left arm injuries, as well as nerve damage, suffered in a motor vehicle accident (head-on collision).  (R. 14, 49, 66-67).[2]  His claim was denied

---

[1]We agree with Defendant (Doc. 9, p. 1, n. 1)  that since Michael J. Astrue is the new Commissioner and succeeded Linda McMahon  as Acting Commissioner, he is automatically substituted  as the Defendant herein.  See Fed. R. Civ. P. 25(d)(1).

[2]There is no dispute that the Plaintiff meets the nondisability requirements for DIB benefits and is insured for benefits through December 31, 2007. (R. 14, 16).   The record reveals that Plaintiff had past work experience to provide insured status.  (R. 58-65).

initially (R. 13), and a timely request for a hearing was filed.  A hearing was conducted before an Administrative Law Judge ("ALJ") on April 6, 2006.  Plaintiff was denied benefits pursuant to the ALJ's decision of April 18, 2006.  (R. 14-22).

The Plaintiff requested review of the ALJ's decision by the Appeals Council.  Said request for review was denied on July 14, 2006 (R. 5-8), thereby making the ALJ's decision the "final decision" of the Commissioner.  42 U.S.C. § 405(g). That decision is the subject of this appeal.

In compliance with the Procedural Order issued in this matter, the parties have filed briefs in support of their respective positions.  (Docs. 6 & 9).

## II. STANDARD OF REVIEW.

When reviewing the denial of DIB, we must determine whether the denial is supported by substantial evidence.  *Brown v. Bowen*, 845 F.2d 1211, 1213 (3rd Cir. 1988); *Mason v. Shalala*, 994 F.2d 1058 (3rd Cir. 1993).  Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552 (1988); *Hartranft v. Apfel*, 181 F.3d 358, 360. (3d Cir. 1999).  It is less than a preponderance of the evidence but more than a mere scintilla.  *Richardson v. Perales*, 402 U.S. 389, 401 (1971).  The parties agree on the stated standard of review. (Doc. 5, p. 4 & Doc. 6, pp. 1-2).

To receive disability benefits, the Plaintiff must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 432(d)(1)(A).  Furthermore,

> [a]n individual shall be determined to be under a disability only if his
> physical or mental impairment or impairments are of such severity that he
> is not only unable to do his previous work but cannot, considering his age,
> education, and work experience, engage in any other kind of substantial
> gainful work which exists in the national economy, regardless of whether
> such work exists in the immediate area in which he lives, or whether a
> specific job vacancy exists for him, or whether he would be hired if he
> applied for work.  For purposes of the preceding sentence (with
> respect to any individual), "work which exists in the national economy"
> means work which exists in significant numbers either in the
> region where such individual lives or in several regions of the country.

42 U.S.C. § 423(d)(2)(A).

## III.  ELIGIBILITY EVALUATION PROCESS.

A five-step evaluation process is used to determine if a person is eligible for disability benefits.  *See* 20 C.F.R. § 404.1520 (1990).  *See also Plummer v. Apfel*, 186 F.3d 422, 428 (3d Cir. 1999).  If the Commissioner finds that a Plaintiff is disabled or not disabled at any point in the sequence, review does not proceed any further.  20 C.F.R. §§ 404.1520, 416.920 (1995).

The first step of the process requires the Plaintiff to establish that he has not engaged in "substantial gainful activity."  *See* C.F.R. §§ 404.1520(b), 416.920(b).  The second step involves an evaluation of whether the Plaintiff has a severe impairment.  *See* 20 C.F.R. §§ 404.1520(c), 416.920(c).  The Commissioner must then determine whether the Plaintiff's impairment or combination of impairments meets or equals those listed in Appendix 1, Subpart P, Regulation No. 4.

If it is determined that the Plaintiff's impairment does not meet or equal a listed impairment, the Commissioner must continue with the sequential evaluation process and consider whether the Plaintiff establishes that he is unable to perform his past relevant work.  *See* 20 C.F.R.

§ 404.1520(e), 416.920(e).  The Plaintiff bears the burden of demonstrating an inability to return to her past relevant work.  *Plummer*, 186 F.3d at 428.  Then the burden of proceeding shifts to the Commissioner to demonstrate that other jobs exist in significant numbers in the national economy that the Plaintiff is able to perform, consistent with his medically determinable impairments, functional limitations, age, education and past work experience.   20 C.F.R. §§ 404.1520(f), 416.920(f).  This is step five, and at this step, the Commissioner is to consider the Plaintiff's stated vocational factors.  *Id.*

The ALJ proceeded through each step of the sequential evaluation process and concluded that the Plaintiff was not disabled within the meaning of the Social Security Act. (R. 22).   In reaching this determination, the ALJ first found that Plaintiff had not engaged in substantial gainful work activity since his alleged onset date. (R. 16).   Further, the ALJ determined that the medical evidence establishes that Plaintiff has left arm brachial plexus stretch injury, status-post motor vehicle accident, impairments which are severe within the meaning of the Regulations, but not severe enough to meet or equal the criteria for establishing disability under the listed impairments as set forth in Appendix 1, Subpart P, Regulations No. 4. (R. 16-17).   The ALJ found that Plaintiff did not have a medically determinable severe back impairment that significantly limits his ability to perform basic work activities.  (R. 17).

The ALJ noted that Plaintiff's testimony was not entirely credible to the extent that he claims limitations, duration and intensity imposed by his symptoms.  (R. 18).  When assessing his residual functional capacity ("RFC"), the ALJ found that Plaintiff retains the following residual functional capacity: to perform light  work with his dominant (right) upper extremity.  (R. 18).  The

4

ALJ also found that, based on the testimony of a vocational expert (VE), the Plaintiff could perform his past relevant work as a front desk clerk and courier. (R. 21). Thus, the ALJ found that the Plaintiff did not meet his burden in Step Four, and the inquiry did not move to Step Five. The ALJ determined that Plaintiff was not disabled under the Act from July 14, 2003 to the date of his decision. (*Id.*).

The relevant time period for this case with respect to Plaintiff's DIB application is July 14, 2003 (the alleged disability onset date) through April 18, 2006 (date of ALJ's decision). (R. 21).

## IV. DISCUSSION.

This appeal involves the denial of Plaintiff's application for DIB. Plaintiff filed his application in July 2004, which was denied in April 2006, by the decision of an ALJ. The issue in this case is whether substantial evidence supports the Commissioner's decision that the Plaintiff was not disabled. (R. 22).

While the ALJ found that the Plaintiff had severe impairments, (R. 16, ¶ 3.), he determined that his impairments did not meet or medically equal a listed impairment. Essentially, the Plaintiff disputes the ALJ's finding that he does not have a back impairment that meets or medically equals a listed impairment, *i.e.,* § 1.02. Specifically, the Plaintiff contends that the ALJ erred in assessing his back problems and failed to properly determine that this was a severe impairment. (Doc. 6, pp. 4-5). The Plaintiff further contends that the ALJ failed to give proper weight to his back problems and erroneously found that he could perform his past work. Plaintiff

also argues that the ALJ erred in rejecting the opinions of his treating physicians concerning his limitations, *i.e.* Dr. Chapla, Dr. Jeffreys, and Dr. Solley.  (*Id.*, p. 6).[3]

## A. Background

The Plaintiff was born on July 19, 1954.  (R. 49).  He was 51 years old at the time of the hearing before the ALJ on April 6, 2006.  Plaintiff completed high school and has vocational training in heavy equipment operation.  (R. 72).  His past relevant work included construction work, a printing press operator, front desk clerk and a courier.  (R. 67, 363-364).  The Plaintiff alleges that he became disabled on July 14, 2003, because of severe back and left arm injuries  he sustained in a car accident.  (R. 66).  The ALJ found that the Plaintiff's left upper extremity impairment was severe. (R.  16, ¶ 3.).  The ALJ found that the record did not support that Plaintiff had a medically determinable back impairment.  (*Id.*).  The  ALJ also found that the Plaintiff retained the residual functional capacity to engage in a light work activity with his dominant right upper extremity.  (R. 18, ¶ 5.).[4]  Finding that the Plaintiff's RFC did not preclude him  from performing his past relevant

---

[3] Dr. Chapla was a consulting doctor for a state agency.  R. 17, 219).

[4]Light  work is defined as follows:

> (b) *Light work.*   Light work involves lifting no more than 20 pounds
> at a time with frequent lifting or carrying of objects weighing up to
> 10 pounds.  Even though the weight lifted may be very little, a
> job is in this category when it requires a good deal of walking
> or standing, or when it involves sitting most of the time with some
> pushing and puling of arm or leg controls.  To be considered
> capable of performing a full or wide range of light work, you must
> have the ability to do substantially all of these activities.  If someone
> can do light work, we determine that he or she can also do sedentary
> work, unless there are additional limiting factors such as loss of fine

work based on the testimony of a VE (R. 367), that Plaintiff's prior jobs could be performed by a person with Plaintiff's functional limitations and with only the dominant right upper extremity, the ALJ held that the Plaintiff was not disabled within the meaning of the Social Security Act.  (R. 22).

### B. Medical Evidence

On appeal, Plaintiff asserts that the ALJ failed to properly consider his back impairment as severe, and that the ALJ did not give proper weight to the opinions of his treating physicians.

The medical evidence reveals that Plaintiff was involved in a car accident on July 14, 2003, and there is no dispute that he suffered a severe left upper extremity impairment. (R. 19). In fact, both the ALJ and Plaintiff's doctors indicated that he had left arm brachial plexus stretch injury. (R. 16, 152, 341). Plaintiff also had back pain after the auto accident. (R. 16, 66). Since there is no dispute that Plaintiff's upper left extremity impairment is severe, we shall not address the medical records with respect to this impairment. In fact, as Plaintiff points out in his Brief (Doc. 6, p. 2), the ALJ stated that Plaintiff's "left upper extremity impairments are fully documented and show that his left arm is of very little vocational use." (R. 19). Also, in his RFC finding, the ALJ only considered Plaintiff's ability to preform work with his dominant right upper extremity. (R. 18). However, the ALJ found that Plaintiff's severe left upper extremity impairments did not render the Plaintiff disabled.  (R. 16-17).

---

dexterity or inability to sit for long periods of time.

20 C.F.R. §404.1567 (b).

We shall focus on the disputed condition, *i.e.* Plaintiff's back condition, and the ALJ's finding that it was not a medically determinable impairment.

Plaintiff testified as follows:

> My left arm and hand are completely numb and my lower back right, I have a great big lump back there that just doesn't go away since the accident and they say it won't go away.  It comes and goes here and there  - - it stays.  And my legs aren't that good as they used to either like when I was working.  And my concentration is just not that good either anymore.  Plus I got to put on hot packs on my left shoulder three times a day and cold packs on my back three times a day at the same time if I can.

(R. 350).

Plaintiff rated his pain a 9 out of 10.  He had to stop twice and walk around while traveling from Williamsport to Wilkes-Barre for his ALJ hearing since "that lump swells up." (R. 360).

As Defendant points out (Doc. 9. p. 5), contrary to Plaintiff's testimony that "I can't drive because of the [July 2003] accident," he was arrested in 2005 for DUI, and he was convicted and sentenced to 30 to 40 days in jail and one year probation.  (R. 349, 366).  Also, as stated below, in September 2003, Plaintiff reported to Dr. Hess that he was driving his pick-up after the accident.  (R. 129).          Two days after the car accident, Dr. Kolb examined Plaintiff and diagnosed Plaintiff with midback strain.  The doctor also stated that Plaintiff had good strength to his lower extremities and that he can stoop and squat.  (R. 139).  Dr. Kolb indicated that an x-ray of Plaintiff's lumbar spine showed no evidence of malalignment or fractures, and there was some degenerative changes noted.  (R. 135).  Dr. Kolb also found:

> There is full range of motion of the thoracic and lumbar spine without any palpable tenderness from the cervical spine to the

> sacrum.  There is no evidence of contusion, bruising, or
> abrasions.  He does have some mild soft tissue tenderness
> noted [ ] the left flank area.  He has normal reflexes to
> his upper and lower extremities.  Supine straight leg raises
> are only limited by tight hamstrings.  His left knee reveals
> no abrasions or contusions.  There is some mild tenderness
> with patellar compression.  Patellar inhibition is negative.  He is able
> to lift his leg.  He has good strength.  There are no effusions.

(R. 138-139).[5]

Dr. Kolb noted that Plaintiff's tests taken in the ER after the accident, including CT scan of his neck and neck x-ray, were negative.  (R. 139).  Dr. Kolb opined that Plaintiff could return to work with no lifting over 10 pounds, no pushing or pulling over 20 pounds and no repetitive twisting.  (R. 139).

A lumbar spine bone scan in August 2003 showed:

> IMPRESSION: Negative three phase bone scan and negative
> SPECT bone scan of the lumbar spine.  Scoliosis of the
> thoracic spine and superimposed arthritis in the mid thoracic
> spine.  Several other areas of probable arthritis including the
> shoulders, the knees, the wrists, and several finger joints.

(R. 141).

Dr. Hess examined Plaintiff in September 2003 and found he had persistent right low back pain.  (R. 129).  Dr. Hess found that Plaintiff could perform as follows:

> WORK STATUS: He could be lifting up to 10 to 15 pounds and
> avoiding a lot of repetitive bending and twisting.  Okay to drive a
> "non-commercial vehicle."  He was advised not to take Lortab
> when driving.  He reports he has been driving his own pick up truck.

---

[5]Dr. Kolb's findings also contained Dr. Hess' name under the signature block on the report.  (R. 138-139).

(R. 129).

Dr. Hess treated Plaintiff from July 2003 thorough September 2003, and as Defendant indicates (Doc. 9, p. 4), he found that Plaintiff could preform light duty work.  (R. 129-134).

Dr. Hess referred Plaintiff to Dr. Rigal of the Pain Management Center. (R. 146).  Dr. Rigal's evaluation of Plaintiff in October 2003 was as follows:

> Bone scan examination of the lumbar spine has been obtained with SPECT analysis.  This is negative.  There is no concentration of radionucleotide on any of vertebral bodies or any of the facet complexes.

> Examination of the patient four views is basically within normal limits.  An MRI examination of the lumbar spine has not been obtained.

> The patient has communicated to me that he is not interested in any therapy that I might provide to him and his only interest at this time is for me to provide him prescriptions particularly his narcotic prescriptions.

> He refused physical examination.

(R. 146).

A December 2003 MRI of Plaintiff's cervical spine showed:

> IMPRESSION: Tiny disc herniation C4-5, small disc herniation C5-6 close to the midline without evidence of compression of the thecal sac or spinal cord.  No major foraminal narrowing is identified. The other structures appear unremarkable.

(R. 174).

Plaintiff had mild scoliosis, small disc protrusion at C4-5 and C5-6, no significant impingement on his spinal cord or canal stenosis.   No abnormality was found at Plaintiff's craniovertebral junction.  (R. 174).

Plaintiff, as he states in his Brief (Doc. 6, p. 3), received chiropractic treatment from Dr. Solley from September 2003 through July 2004. (R. 146, 201-217). In September 2003, Dr. Solley found that Plaintiff was able to work with the following limitations:

> lifting limit of 0-10 lbs., standing/walking 1-2 hours,
> sitting 1-2 hours no driving, and  no repetitive bending,
> squatting, stooping climbing, pushing.  (R. 215).

In August 2004, Dr. Chang treated Plaintiff for low back pain. (R. 249).  He noted that Plaintiff can feel a lump in his right low back since the MVA, and that his lump was painful but did not radiate.  He noted that Plaintiff's pain was aggravated by driving to Virginia.  Plaintiff was taking Tylenol and Skelaxin.  Plaintiff's right and left leg raises tests were negative. His low back was very tight, which limited his flexion of his back beyond about 60 degrees.  Dr. Chang could "palpate a muscular nodule in [Plaintiff's] right paraspinal muscles of lumbar area."  (R. 250).  Pain/muscle spasm of Plaintiff's right low back was diagnosed.  (*Id*.).  Physical therapy was prescribed.

As Defendant states (Doc. 9, pp. 4-5), in December 2004, a state agency doctor completed a RFC assessment and considered Plaintiff's physical impairments, and particularly reviewed Plaintiff's record concerning his back impairment. (R. 229).  The doctor concluded that Plaintiff could perform medium work. (R. 227-234).  Specifically, Plaintiff was found to be able to lift and carry 50 pounds occasionally and 25 pounds frequently.  He was found to able to sit about 6 hours and stand/walk for 6 hours.  He was found unlimited in his ability to push/pull.  (R. 228). Plaintiff's gait was "WNL," within normal limits.  (R. 228, 233).  No postural limits were found, no manipulative limits were found, and no visual and communicative limits were found.  (R. 229-231).

Dr. Chapla examined Plaintiff on November 29, 2004 as a consulting doctor for a state agency medical determination. (R. 17, 219). He indicated that Plaintiff was having continuous mid-back and lower back pain radiating to his right leg up to his right knee. Dr. Chapla found, in part, as follows:

> IMPRESSION:
>
> 1. Chronic lower back pain and mid back pain.
> 2. Possible arthritis with degenerative disc disease.
> 3. Chronic right knee pain secondary to postural muscle, probably secondary to arthritis.
> 4. Chronic bilateral hand pain secondary to carpal tunnel and possibility of brachial nerve damage on the left side.

(R. 221).

Dr. Chapla also found, with respect to Plaintiff's ability to do work-related activities, as follows:

> Lifting and Carrying:      2 to 3 pounds.
> Standing and Walking:    Less than 10 minutes.
> Sitting down:                 10 to 15 minutes.
> Pushing and Pulling:       Limited in both upper and lower extremity.
>
> Other postural activities, bending, kneeling, stooping, crouching, balancing, and climbing: He cannot do at all.
>
> Other physical functions: Eating, handling, fingering and feeling problem with both hands.
>
> Environmental restriction: Because of cold weather, he gets more pain. Range of motion: Shoulder forward evaluation, right, within normal limits, left 80 degrees. Abduction, right, within normal limits. Left, 80 degrees. Lumbosacral spine flexion and extension 45 degrees and lateral flexion, right and left, is 10 degrees.

(R. 221).

12

Dr. Jeffreys, a neurologist, examined Plaintiff on February 24, 2006. (R. 341). He noted that Plaintiff had cervicalgia. Dr. Jeffreys also noted:

> He continues to have high-intensity right low back pain with a lump in the low back adjacent to the right lumbar spine. Pressure on this area or riding or sitting causes him considerable pain. Examination of the pain today reveals a well-developed, pale, depressed man in modest distress. He has problems moving about the table because of pain in his back and arm, however, is cooperative. Can carry out 3-step maneuvers and cross the midline.

(R. 341). Dr. Jeffreys found Plaintiff's neck was restricted in the lateral ranges of flexion, with fair rotation, normal power and sensation, no bruit. (R. 341). Dr. Jeffreys also found:

> The patient has a straightened lumbosacral curve with muscle spasm in the right paravertebral area in the lumbosacral vertebral muscles. He walks on a slightly widened base with decreased automatic associated movements in his left arm. He can walk on his heels and toes and tandem walk. His Romberg is negative.

(R. 342). Dr. Jeffreys opined in February 2006 that Plaintiff appeared "currently to be totally and probably permanently disabled." (*Id.*).

The ALJ found that, with respect to Plaintiff's medically determinable physical impairment, left arm brachial plexus, which is severe, it did not meet or equal any listed impairment. (R. 16-17). In his Brief (Doc. 6), we do not find that Plaintiff argues that this decision of the ALJ was in error. Rather, we find Plaintiff (*Id.*, pp. 4-5) to dispute the ALJ's conclusion that the record did not support that he had a medically determinable back impairment. (R. 16). The Plaintiff also disputes the ALJ's finding that, since he had no severe back impairment, his severe left arm impairment did not prevent him from performing his past relevant work as a desk clerk and courier. The Plaintiff further contends, in part, that the ALJ's decision is not supported by substantial evidence since he failed to

13

properly consider the opinions of Dr. Chapla, Dr. Jeffreys and Dr. Solley regarding his limitations. We agree with Defendant that the ALJ's decision that Plaintiff was not disabled was supported by substantial evidence in light of the medical record as discussed above.

### D. Analysis

The Plaintiff contends that the ALJ erred in addressing his back impairment and in finding that he did not have a medically determinable severe back impairment since it was not supported by the medical evidence. He argues that the ALJ's finding that his back impairment was not severe and did not significantly limit his ability to perform basic work activities was contrary to the medical evidence. (Doc. 6, pp. 4-5). Plaintiff argues that because the ALJ erred in finding his back problems did not have a significant impact on his vocational abilities, the ALJ also erred in finding that he could perform his past work. Plaintiff states that his past courier job does not allow him a sit/stand option and is not suitable for him due to his back pain.

Initially, we agree with Defendant that the ALJ's finding that Plaintiff did not have a severe back impairment is not relevant since the ALJ proceeded to Step Four of the sequential process as indicated above. (Doc. 9, p. 7). Defendant cites to *McCrea v. Soc. Sec. Comm.*, 370 F. 3d 357 (3d Cir. 2004) and *Newell v. Soc. Sec. Comm.*, 347 F. 3d 541 (3d Cir. 2003), and indicates that in these cases, the ALJ denied claimant's DIB applications at Step Two, and not Step Four as in the present case. (*Id*.).

In *McCrea*, the Plaintiff had herniated spinal discs and complained of constant back pain, and he challenged the Commissioner's finding at "step two's *de minimis* threshold" that he did not have a severe back impairment. In our case, the ALJ found that Plaintiff met his burden at Step Two,

14

*i.e.*, a slight abnormality that had a minimal effect on his ability to walk.  The *McCrea* Court stated that step two is rarely used as a basis to deny DIB benefits.  370 F.3d at 361.

In *Newell*, the Court stated that Step Two was a "*de minimis* screening device" to uncover baseless claims.  347 F.3d at 546.  The Court stated that only "claimants with slight abnormalities that do not significantly limit any 'basic work activity' can be denied benefits at step two."  *Id*.  The Court then found that the ALJ erred in denying Plaintiff's claim at Step Two.

As the Court stated in *Sassone v. Soc. Sec. Comm.*, 165 Fed. Appx. 954,  956 (3d Cir. 2006)(Non-Precedential), at Step Two, the Defendant must find if Plaintiff has a severe impairment.  In our case, the ALJ found that Plaintiff had severe impairments and continued the evaluation process to Step Four.  Since the ALJ found that Plaintiff's severe impairment did not meet or equal a listed impairment, he proceeded to Step Four and found that Plaintiff had the RFC to perform his past relevant work.   Also, as the *Sassone* Court stated, "the claimant bears the burden of demonstrating an inability to perform her past relevant work." (Citation omitted).  *Id*.  Plaintiff appears to take issue with the ALJ's Step Two finding that his back impairment was not a severe impairment.  As stated, we agree with Defendant that this argument is without merit, since the ALJ found that Plaintiff met his burden at Step Two.

We also find substantial evidence supports the ALJ's finding that Plaintiff's back impairment was not severe.  Despite the fact that the medical records, discussed in detail above, did reference Plaintiff's chronic mid and lower back pain (R. 221) commencing after the MVA, Plaintiff does not point to any medical evidence which shows that his back condition amounted to a severe impairment.  Nor do we find the medical evidence, which we have discussed above in detail, shows

that Plaintiff's back condition was a severe impairment.  Indeed, he had small disc herniation, but there was no evidence of compression of the thecal sac or spinal cord.  (R. 174).   He had mild cervical scoliosis. (R. 175).   He had possible arthritis with degenerative disc disease. (R. 221). He had muscle spasm in his right paravertebral area but his gait was found within normal limits and his bone scan was negative.  (R. 342, 146).  Plaintiff was found to have right low back pain with a lump in his low back adjacent to this right lumbar spine, as Dr. Jeffreys indicated (R. 341), but the objective medical tests, discussed above, did not show that this physical ailment was severe. The ALJ found that Plaintiff was not on pain medication for his back (R. 17), but Plaintiff indicates that he was in drug/alcohol counseling and was concerned about pain medications.  (Doc. 6, pp. 5-6).

As the *Sassone* Court stated:

> "A severe impairment is something that significantly limits a
> claimant's ability to do basic work activities, which in the case of a physical
> ailment means that it inhibits a claimant's ability to walk, sit, stand, lift,
> reach and carry. 20 C.F.R. § 404.1521. Under 20 C.F.R. § 404.1529(b),
> more than just Sassone's subjective complaints of pain are needed to find
> that such pain constitutes a severe impairment. Here, Sassone's subjective
> complaints of pain are not sufficiently supported by the necessary
> objective medical evidence to allow the ALJ to decide that Sassone's
> back pain constitutes a severe impairment." *Id.,* 957-958.

Defendant also correctly points out (*Id*., p. 8) that in the RFC by the state agency physician, discussed above, Plaintiff's records regarding his back were fully considered, and nonetheless, Plaintiff was found capable of performing medium work.  (R. 228-229).  We do not find the above stated reports of the treating doctors indicated Plaintiff's back condition was a severe impairment.  We agree with Defendant (Doc. 9, p. 8) that the proper issue in our case is whether substantial evidence supports the ALJ's decision that Plaintiff could perform work activities.

The Plaintiff further contends that the ALJ failed to give proper weight to the opinions of his treating physicians, Dr. Jeffreys and Dr. Chapla, and his chiropractor, Dr. Solley, regarding his limitations. Thus, Plaintiff, in part, requests that the decision of the Commissioner denying his DIB be reversed because the ALJ failed to give appropriate weight to the opinions of his attending physicians. *See Mason v. Shalala*, 994 F. 2d 1058, 1067 (3d Cir. 1993). (Doc. 6, pp. 6-7).

The ALJ found that Plaintiff did have severe impairments, left arm brachial plexus, based on the requirements set forth at 20 C.F.R. § 404.1520. (R. 16 @ ¶ 3.). However, he also found that such impairments did not render the Plaintiff disabled. (R. 17, ¶ 4.). The existence of a medical condition does not demonstrate a disability for purposes of the Act. Thus, the issue was not whether Plaintiff suffered from a medical condition, but whether that condition results in a functional disability that prevents Plaintiff from performing substantial gainful activity. *See Petition of Sullivan*, 904 F. 2d 826, 845 (3d Cir. 1990). As discussed above, we find, contrary to Plaintiff's argument, that the medical evidence supported the ALJ's finding that the Plaintiff was not disabled.

The Court of Appeals for the Third Circuit set forth the standard for evaluating the opinion of a treating physician in the case of *Morales v. Apfel*, 225 F.3d 310 (3rd Cir. 2000). The Court stated:

> A cardinal principle guiding disability eligibility determinations is that the ALJ accord treating physicians' reports great weight, especially "when their opinions reflect expert judgment based on a continuing observation of the patient's condition over a prolonged period of time." *Plummer* [v. *Apfel*, 186 F.3d 422, 429 (3d Cir.1999)] (*quoting Rocco v. Heckler*, 826 F.2d 1348, 1350 (3d Cir.1987)); *see also Adorno v. Shalala*, 40 F.3d 43, 47 (3d Cir.1994); *Jones*, 954 F.2d at 128; *Allen v. Bowen*, 881 F.2d 37, 40-41 (3d Cir.1989); *Frankenfield v. Bowen*, 861 F.2d 405, 408 (3d Cir.1988); *Brewster*, 786 F.2d at 585. Where, as here, the opinion of a treating physician conflicts with that of a non-treating, non-examining physician,

17

> the ALJ may choose whom to credit but "cannot reject evidence for no reason or for the wrong reason." *Plummer*, 186 F.3d at 429 (*citing Mason v. Shalala*, 994 F.2d 1058, 1066 (3d Cir.1993)). The ALJ must consider the medical findings that support a treating physician's opinion that the claimant is disabled. *See Adorno*, 40 F.3d at 48. In choosing to reject the treating physician's assessment, an ALJ may not make "speculative inferences from medical reports" and may reject "a treating physician's opinion outright only on the basis of contradictory medical evidence" and not due to his or her own credibility judgments, speculation or lay opinion. *Plummer*, 186 F.3d at 429; *Frankenfield v. Bowen*, 861 F.2d 405, 408 (3d Cir.1988); *Kent*, 710 F.2d at 115.

*Id.* at 317-318.

As discussed, the ALJ found that the Plaintiff had physical impairments which were severe, but that they were not severe enough to meet or equal any listed impairment. The ALJ also found that the Plaintiff had the RFC to perform his past work as a front desk clerk and courier, and that he had the RFC to perform light work. Plaintiff argues that his back condition limited his ability to drive as required by the courier job without a sit/stand at will option. (Doc. 6, p. 5). However as discussed, Plaintiff was driving after the MVA, and was driving in 2005 when he was arrested for DUI. While Plaintiff stated he drove to the ALJ hearing from Williamsport to Wilkes-Barre, he had to stop twice to walk. We find substantial evidence, detailed above, supports the ALJ finding that Plaintiff could perform his past relevant work.

Plaintiff claims that the ALJ erred in considering the September 2003 assessment of Dr. Solley discussed above, and that he erred with respect to Dr. Chapla's December 2004 work-related activities assessment. Plaintiff states that the ALJ did not properly consider Dr. Jeffreys' findings of February 2006, and Dr. Jeffreys' opinion that he was probably permanently disabled. (Doc. 6, p. 6).

The Defendant argues that Plaintiff fails to mention the four medical source opinions in the record which indicated that he could work. Defendant refers to Dr. Hess' opinion that Plaintiff could perform light work. (Doc. 9, pp. 8-9). We have stated Dr. Hess' relevant findings above. Defendant also refers to Dr. Bailey, who treated Plaintiff mainly for his left hand injury. Dr. Bailey found that Plaintiff could do light duty work. (R. 121-122, 124). Defendant next points to the December 2004 RFC assessment described above, in which Plaintiff was found capable of doing medium work. (R. 228-229). The ALJ's RFC finding was more restrictive than the medical consultant's December 2004 RFC, since the ALJ found Plaintiff could only perform light work. Finally, Defendant states (*Id.*, pp. 10-11) that Dr. Rigal, and her record indicating that Plaintiff would not let her examine or treat him for his back condition (R. 146), supports the ALJ's decision. As stated above, Dr. Rigal stated that Plaintiff's bone scan was negative.

We concur with Defendant (*Id.*, p. 11) that the four stated opinions, all discussed above, constitute substantial evidence to support the ALJ's decision not to accept the assessments of Dr. Solley, Dr. Jeffreys and Dr. Chapla.

The parties agree that Dr. Solley was not an acceptable medical source. (Doc. 6, p. 7 and Doc. 9, p. 11). The ALJ considered Dr. Solley's notes and opinion, and he did not give it controlling weight. (R. 20). Based on the records discussed above, we find substantial evidence supports the ALJ's consideration of Dr. Solley's opinions.

The ALJ also considered Dr. Chapla's evaluation. (R. 20). He did not give significant weight to Dr. Chapla's opinion, since he found it was not supported by the objective evidence or by his physical findings. We find substantial evidence supports this determination by the ALJ. The

medical record detailed above clearly did not support Dr. Chapla's finding that Plaintiff could lift

only 2-3 pounds, and could stand and walk less than 10 minutes.

The ALJ considered Dr. Jeffreys' two treating records and his opinion that Plaintiff was

probably permanently disabled.  (R. 17).  As Defendant states, (Doc. 9, pp. 12-13), the issue of

disability determination is reserved to the Commissioner. 20 C.F.R. § 416.927(e)(3) [404. 1527(e)].

The ALJ weighed the state agency diagnostic assessments and the relevant, objective medical

evidence and concluded that Plaintiff was not completely disabled. *See Corly v. Barnhart*, 102 Fed.

Appx. 752 (3d Cir. 2004); *see also Adorno v. Shalala*, 40 F. 3d 43, 47-48 (3d Cir. 1999) (holding that

a statement by a treating physician deeming a plaintiff "disabled" or "unable to work" is not

dispositive.  An ALJ must review all the medical findings and other evidence and weigh it against the

opinion of the treating physician).  Also as Defendant states, the  records from Dr. Jeffreys do not

contain findings regarding Plaintiff's specific functional limitations and his functional ability to

perform any work activities, including light work.  Plaintiff's prior work was classified as light semi-

skilled.[6]  We also find that substantial evidence supports the ALJ's decision, based on the above

medical findings and Plaintiff's daily activities, that Plaintiff could perform his past relevant work. [7]

(R. 21).

---

[6]There is  no dispute that Plaintiff's past relevant work was light semi-skilled  in
nature, as the VE testified.  (R. 367-368).

[7]The Plaintiff's daily activities can provide evidence of his symptoms and their effects
on his  ability to work.  *See* 20 C.F.R. § 404.1529(c)(3)(i).  The ALJ properly considered the
Plaintiff's activities of daily living.  (R. 21).

The ALJ's finding, that Plaintiff was not precluded from his past relevant jobs as a front desk clerk and courier was entirely consistent with the stated record of Dr. Hess, Dr. Bailey and the state agency doctor who performed the December 2004 RFC assessment.

At the ALJ hearing, the Plaintiff's full work history was addressed by the ALJ. (R. 367). The ALJ asked the VE to summarize Plaintiff's work history at the hearing. (R. 367). The ALJ, in his decision, found that the Plaintiff could perform his past work. (R. 21). The record indicates that the ALJ considered all of the evidence, including the objective medical evidence, Plaintiff's daily activities and Plaintiff's complaints of pain. We find that substantial evidence supports the ALJ's determination that Plaintiff was not disabled.

**V.  Recommendation.**

Based on the foregoing, it is respectfully recommended that the Plaintiff's appeal of the

ALJ's decision April 18, 2006 be denied.

––––––––

                                               **s/ Thomas M. Blewitt**
                                               **THOMAS M. BLEWITT**
                                               **United States Magistrate Judge**

**Dated: May 24, 2007**

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| RONALD R. FAGLES, | : | CIVIL ACTION NO. **1:CV-06-1806** |
| | : | |
| Plaintiff | : | (Judge Caldwell) |
| | : | |
| v. | : | (Magistrate Judge Blewitt) |
| | : | |
| MICHAEL J. ASTRUE, | : | |
| Commissioner of | : | |
| Social Security, | : | |
| | : | |
| Defendant | : | |

## <u>NOTICE</u>

**NOTICE IS HEREBY GIVEN** that the undersigned has entered the foregoing

**Report and Recommendation** dated **May 24, 2007.**

Any party may obtain a review of the Report and Recommendation pursuant to

Rule 72.3, which provides:

Any party may object to a magistrate judge's proposed findings,
recommendations or report addressing a motion or matter described in
28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the
disposition of a prisoner case or a habeas corpus petition within ten (10)
days after being served with a copy thereof.  Such party shall file
with the clerk of court, and serve on the magistrate judge and all
parties, written objections which shall specifically identify the
portions of the proposed findings, recommendations or report to which
objection is made and the basis for such objections.  The briefing
requirements set forth in Local Rule 72.2 shall apply.  A judge shall
make a *Defendant novo* determination of those portions of the report or
specified proposed findings or recommendations to which objection
is made and may accept, reject, or modify, in whole or in part, the findings
or recommendations made by the magistrate judge.  The judge, however,
need conduct a new hearing only in his or her discretion or where
required by law, and may consider the record developed before the
magistrate judge, making his or her own determination on the basis

of that record.  The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

s/ Thomas M. Blewitt
**THOMAS M. BLEWITT**
**United States Magistrate Judge**

**Dated: May 24, 2007**